[Dkt. Ent. 5]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| BRUCE ARISTEO, | |
| Plaintiff, | Civil No. 15-4115 (RMB/JS) |
| v. | **OPINION** |
| JODY RAINES, et al., | |
| Defendants. | |

Plaintiff Bruce Aristeo (the "Plaintiff"), an experienced pro se litigant in this Court,[1] initiated this civil action on June 3, 2015.  [Dkt. No. 1 (the "Complaint").]  This Court granted Plaintiff in forma pauperis status to proceed without prepaying fees or costs on June 18, 2015 and directed the Complaint be filed, but reserved on whether summons shall issue until the Court concluded screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2).  [Dkt. No. 2.]  On January 21, 2016, Plaintiff amended the Complaint.  [Dkt. No. 5 (the "Amended Complaint").]  The Amended Complaint involved substantially the same claims and added four additional defendants.  The Court now

---

[1] In addition to the three actions discussed below, Plaintiff has also appeared pro se in this district in other cases.  Aristeo v. Raines, Civ. No. 11-4247 (July 22, 2011); Aristeo v. New Jersey, Civ. No. 15-3350 (May 14, 2015); New Jersey v. Aristeo, Civ. No. 14-7911 (Dec. 22, 2014).

screens the Amended Complaint pursuant to 28 U.S.C. §
1915(e)(2).

## I.   <u>BACKGROUND</u>

Plaintiff's Amended Complaint asserts a litany of causes of
action.  Although Plaintiff leaves out many key facts that might
tie a cohesive narrative together with regard to his
allegations, the Court can discern that his causes of action
trace back to a dispute between Defendant Jody Raines, who
Plaintiff alleges was both his employer and a romantic interest,
and himself.  After the personal and business relationship
soured and a subsequent restraining order was issued against
Plaintiff, he encountered a series of business and law
enforcement entanglements.  Specifically, Plaintiff alleges Ms.
Raines and dozens of other individuals engaged in conduct
ranging from copyright infringement to violation of his
constitutional rights under the Eighth Amendment.  The Court
explains the relevant alleged facts of each cause of action as
it addresses them in turn below.

It is worth noting at the outset that this is not the first
time Plaintiff has pursued legal action on this set of
allegations.  In three other actions involving substantially
similar facts and many of the same defendants, Plaintiff filed
*extremely* voluminous complaints, proceeding <u>in forma pauperis</u> in
each action.  See <u>Aristeo v. Helmer</u>, Civ. No. 15-1252 (D.N.J.

Feb. 17, 2015); Aristeo v. Raines, Civ. No. 14-7689 (D.N.J. Dec. 10, 2014); Aristeo v. County of Camden, Civ. No. 15-769 (D.N.J. Feb. 3, 2015).  On a joint hearing of all three cases, the Court explained to Plaintiff that his complaints were unworkable and instructed him to file a briefer version of his allegations which clearly laid out his causes of action in a concise and coherent manner.  See, e.g., Aristeo v. Helmer, Civ. No. 15-1252 (April 21, 2015 Hr'g Tr. at 6:13-20.)  The Court also instructed Plaintiff that a number of his claims as asserted against prosecutors and judges would likely be barred by prosecutorial and judicial immunities.  Id. at 15:7-12.  The Court provided Plaintiff 30 days from the resulting April 22, 2015 Order to so amend his allegations.  See, e.g., id. (Dkt. No. 6.)  Plaintiff did not elect to simplify or amend his allegations in those cases pursuant to this Court's instructions.  Instead, Plaintiff filed the instant action on June 3, 2015, after the thirty-day period had elapsed.[2]  [Dkt. No. 1.]  The Complaint and Amended

---

[2] This was a problematic decision for Plaintiff, as it necessarily reset the filing date for purposes of statutes of limitations to June 3, 2015.  This Court finds no grounds in the Amended Complaint to equitably toll the statutes of limitations from the filing of Plaintiff's previous actions, but should Plaintiff feel sufficient grounds exist, he may petition this Court for reconsideration.  Plaintiff's conclusory statement that the acts committed against him were continuous in nature through the most recent set of allegations and thus should be excepted from timeliness requirements, (Am. Compl. at ¶ 2), is not borne out by the allegations in the Amended Complaint. Even taken in the light most favorable, Plaintiff's allegations

Complaint incorporate many of the allegations from his three prior actions and are equally long. Plaintiff also ignored the Court's explicit instruction to avoid immune defendants.[3]

## II.  STANDARD FOR SUA SPONTE DISMISSAL

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must preliminarily screen in forma pauperis filings, and must dismiss any filing that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain:

> (1)  [A] short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2)  [A] short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3)  [A] demand for the relief sought, which may include relief in the alternative or different types of relief.

"[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an

---

are a patchwork of isolated and sporadic events, not a pattern. Muhammad v. Dep't of Corrections, 645 F. Supp. 2d 299, 309 (D.N.J. 2013).

   [3] For instance, the Amended Complaint asserts causes of action against three judges before whom Plaintiff appeared, the Camden County Office of the Prosecutor (CCOP), two CCOP assistant prosecutors (AP), and six CCOP employees.  (Am. Compl. at ¶¶ 30-40.)

entitlement with its facts." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 311 (3d Cir. 2009).  However, in screening a complaint to verify whether it meets this standard, this Court is mindful of the requirement that <u>pro se</u> pleadings must be construed liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. Ed 652 (1972).

III. <u>**ANALYSIS**</u>

The Amended Complaint before the Court is formidable, and unnecessarily so.  It spans 59 pages filled with 293 paragraphs of allegations.  Plaintiff also includes 85 pages of exhibits. In total, the Amended Complaint includes 14 causes of action[4] against 39 named defendants and 20 unnamed defendants.

Further, Plaintiff's Amended Complaint is wildly non-compliant with Federal Rule of Civil Procedure 20, joining entirely unrelated defendants and occurrences.  It also stretches compliance with Rule 8's pleading requirement to the limits.  Indeed, the Court is somewhat tempted to dismiss the Amended Complaint for failing to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); <u>see also</u> <u>Hoffenberg v. Grondolsky</u>, 2009 WL 5103181 at *4 (D.N.J. Dec. 17, 2009)

---

[4] Some of these causes of action are actually several related causes of action or include multiple statutory frameworks supposedly entitling Plaintiff to relief.  So, the number of causes of action is actually higher.

(dismissing at screening stage for failure to comply with Rule 8). Nevertheless, the Court declines to do so. Screening Plaintiff's Amended Complaint at this stage seems more prudent, given Plaintiff's abject failure to follow this Court's instruction to simplify his allegations in his last set of actions. As such, the Court screens each cause of action, in turn, below.

## A. Causes of Action 1 & 2 – "Theft of Intellectual Property" and "Destruction of Intellectual Property"

Plaintiff's first and second causes of action concern web content created by Plaintiff. Cause of Action 1 concerns a purported contract whereby Plaintiff alleges he was to generate copyrightable work—"designs, graphics, video, and sales copy"—and Ms. Raines or Webmarcom LLC "agreed to pay Plaintiff to perform [those] duties at either [ ] an hourly rate or paid at 50% of the project quote." (Am. Compl. at ¶ 63.) Plaintiff alleges that these defendants distributed Plaintiff's work product, but did not pay him at the agreed upon rate. (Id. at ¶ 65.) Plaintiff separately claims that Ms. Raines, CCOP, Det. Auletto, and AP Cogan participated in the e-mailing, copying and removal from the internet of Plaintiff's works, which damaged them. (Id. at ¶¶ 72-74.)

Cause of Action 1 is labeled "Theft of Intellectual Property." Cause of Action 2 is labeled "Destruction of

Intellectual Property."  The Court construes these to be claims

for breach of contract and copyright infringement.  (See Compl.

at ¶¶ 65, 68, 74.)

Regarding breach of contract, under New Jersey law, "[t]o

state a claim for breach of contract, a plaintiff must allege

(1) a contract between the parties; (2) a breach of that

contract; (3) damages flowing therefrom; and (4) that the party

stating the claim performed its own contractual obligations."

Lukoil N. Am. LLC v. Turnersville Petroleum Inc., 2015 WL

5455648, at *2 (D.N.J. Sep. 16, 2015) (quoting Frederico v. Home

Depot, 507 F.3d 188, 203 (3d Cir. 2007)).

The allegations indicate that Ms. Raines and Webmarcom

"agreed to pay Plaintiff to perform duties at either paid [sic]

an hourly rate or paid at 50% of the project quote."  (Am.

Compl. ¶ 63.)  However, the documents Plaintiff attaches to the

Complaint and relies upon to substantiate his allegations belie

this.[5]  The text message transcript **explicitly** indicates that the

_____

[5] "A court may . . . consider a document integral to or
explicitly relied upon in the complaint.  Consideration of these
documents will not convert a motion to dismiss into one for
summary judgment." Oshinsky v. New York Football Giants, Inc.,
2009 WL 4120237, at *3 (D.N.J. Nov. 17, 2009) (considering
documents that go to "the very heart of Plaintiff's breach of
contract claim.").  Indeed, to the extent the written document
(essentially a conversation transcript) Plaintiff offers as
substantiating the contract contradicts the allegations, the
written instrument controls.  Creelgroup, Inc. v. NGS Am., Inc.,
518 F. App'x 343, 347 (6th Cir. 2013); accord ALA, Inc. v.

job Plaintiff performed would not be hourly.  (Id. at ¶ 63.)
There is no reference to any percentage of the project being
paid at 50%.  The exhibit specifically indicates that Plaintiff
would be paid a flat fee of "$2k+ for the three [projects.]"[6]
(Id. at Ex. A.)  As such, in light of the exhibit Plaintiff
incorporates into the Amended Complaint, the Court does not find
that Plaintiff has plausibly alleged a contract term that he
would be paid on an hourly or 50% percentage basis.

Regarding Plaintiff's copyright infringement claims, "To
establish a claim of copyright infringement, a plaintiff must
establish: (1) ownership of a valid copyright; and (2)
unauthorized copying of original elements of the plaintiff's
work."  Malibu Media, LLC v. Lee, 2013 WL 22526250, at *4
(D.N.J. May 22, 2013).  In order to demonstrate a valid
copyright, Plaintiff must allege that he complied with the pre-
suit requirement of registering the copyright of his works.
E.E.O.C. v. Vanguard Grp. Inc., 2006 WL 931613, at *4 (D.N.J.
Apr. 10, 2006) ("In order to withstand a motion to dismiss, a
complaint based on copyright infringement must allege . . . that

_____

CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Gavornik v. LPL
Fin. LLC, 2014 WL 3844828, at *5 (D.N.J. Aug. 5, 2014).
     [6] Importantly, Plaintiff does not allege that he was not
paid this amount for the projects.  This lack of an allegation
would thus stave off any unjust enrichment claim.  (See Compl.
at ¶ 78.)

the works in question have been registered with the Copyright
Office in accordance with the statute . . . .").

Plaintiff has not alleged that he has ownership of a valid
copyright—he has only conclusorily alleged that he created works
that would apparently be capable of being copyrighted.  (Am.
Compl. at ¶ 59.); see also Levey v. Brownstone Inv. Grp. LLC,
2012 WL 295718, at *3 (D.N.J. Feb. 1, 2012) ("Subject to certain
exceptions, the Copyright Act requires copyright holders to
register their works before suing for copyright infringement.").
As such, to the extent they assert a claim for copyright
infringement, Causes of Action 1 and 2 must be dismissed at
screening for failure to state a claim.[7] See Lyles v. Capital—
EMI Music, Inc., 2012 WL 3962921, at *4 (S.D. Ohio Sep. 11,
2012) (report and recommendation dismissing copyright
infringement claim at screening stage for failing to allege
registration), adopted by 2012 WL 5378873, at *3 (S.D. Oh. Oct.
30, 2012).

**B. Cause of Action 3 — "Unfair Methods of Competition"**

Cause of Action 3, labeled "Unfair Methods of Competition,"
purports to bring claims against Ms. Raines, Webmarcom, and

---

[7] Moreover, even if Plaintiff could be said to have stated a
claim, with regard to Cause of Action 1, assuming the
distribution occurred shortly after Plaintiff's access to his
works was cut off on March 24, 2011, the claim would be barred.
(Am. Compl. at ¶ 61.)  Copyright infringement is subject to a
three-year statute of limitations.  17 U.S.C. § 507(b).

unnamed defendants for substantially the same conduct described in Causes of Action 1 & 2.  Plaintiff appears to bring Cause of Action 3 pursuant to a definition of "fraudulent, unlawful, and unfair competition" contained in: 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a)(2), 18 U.S.C. § 1951(a), 18 U.S.C. § 1341, and Article I, Section 19 of the New Jersey Constitution.

No private right of action exists under 15 U.S.C. § 45(a)(1) or 15 U.S.C. § 52(a)(2).  Phillips v. Deutsche Bank Nat. Trust Co., 2010 WL 5246032, at *1 (C.D. Cal. Dec. 16, 2010) (no private right of action under 15 U.S.C. § 45(a)(1)); Montgomery v. Kraft Foods Glob., Inc., 2012 WL 6084167, at *1 n.2 (W.D. Mich. Dec. 6, 2012) (No private right of action under 15 U.S.C. § 52(a)(2)).  18 U.S.C. § 1951(a) and 18 U.S.C. § 1341 are both part of the criminal code and also do not provide a private right of action.  Boyd v. Wilmington Trust Co., 630 F. Supp. 2d 379, 385 (D. Del. 2009); Jones v. TD Bank, 468 Fed. Appx. 93 (3d Cir. 2012) (finding that the federal mail fraud statute did not provide plaintiff with private right of action). Finally, Article I, Section 19 of the New Jersey Constitution is the provision of the state constitution providing for collective bargaining rights.  It is obviously not applicable.

Assuming then, that Plaintiff sought to bring a claim for unfair competition claim under the Lanham Act, Plaintiff would need to show, inter alia, that a trademark was at issue that was

"valid and legally protectable." <u>Buying For The Home, LLC v.</u>
<u>Humble Abode, LLC</u>, 459 F. Supp. 2d 310, 317-318 (D.N.J. 2006).
Plaintiff has alleged no valid or enforceable mark on which to
found an unfair competition claim.  Instead, Plaintiff relies
upon the same vaguely described copyright protection discussed
above with regard to Causes of Action 1 and 2.  As such, Cause
of Action 3 must be dismissed at the screening stage.[8]

## C. **Cause of Action 4 – Interference with Government Assisted Programs**

Cause of Action 4 alleges that Ms. Raines and unnamed
defendants interfered with Plaintiff's unemployment benefits.
Specifically, Plaintiff alleges that Ms. Raines or unnamed
defendants contacted the New Jersey Department of Labor and
Workforce and alleged that Plaintiff was working while receiving
unemployment on March 5, 2011 and July 15, 2012.  (Am. Compl. ¶
91.)  As a result, Plaintiff alleges his benefits were
terminated and he was responsible for the repayment of benefits,
amounting to $43,000.  In so doing, Plaintiff alleges that Ms.
Raines and/or unnamed defendants violated 18 U.S.C. §
245(b)(1)(B) and N.J.S.A. 43:21-16.

---

[8] To the extent Plaintiff alleges that the defendants named
in this cause of action committed acts "including the theft and
destruction of property, unjust enrichment, breach of contract,
publication of private information, interference with business
relationships, and other illegal acts and practices," (Am.
Compl. at ¶ 78), such claims are either subsumed by other causes
of action or are completely unsubstantiated by the allegations.

18 U.S.C. § 245(b)(1)(B) is a part of the criminal code and makes it unlawful to interfere with any person's receipt of "benefits of any program or activity receiving Federal financial assistance." Id.  This statute does not create a private right of action.  Wolf v. Jefferson Cnty., 2016 WL 233247, at *2 (E.D. Mo. Jan. 20, 2016); John's Insulation, Inc. v. Siska Const. Co., 774 F. Supp. 156, 163 (S.D.N.Y. 1991) (explaining that 18 U.S.C. § 245 confers neither substantive rights nor a private right of action for damages.").

N.J.S.A. 43:21-16, entitled "Penalties; investigating staff," provides the fining mechanism by which the Division of Unemployment and Temporary Disability Insurance may penalize individuals or employers who make false statements regarding unemployment benefits.  Id. at 43:21-16(a)-(d).  This administrative mechanism, as well, provides Plaintiff with no claim.  As such, Cause of Action 4 is dismissed at screening for failure to state a claim.[9]

---

[9] To a certain extent, this claim sounds in defamation law. Plaintiff is essentially arguing that Ms. Raines—or others—made knowingly false statements concerning his employment status. However, the conduct at issue occurred in 2011 and 2012, (Am. Compl. at ¶ 91, 95), and thus would be barred under New Jersey's one-year statute of limitations for libel and slander actions. N.J.S.A. 2A:14-3.

D. **Cause of Action 5 – Invasion of Privacy – Intrusion Upon Seclusion And Publicity Given to Private Life**

Cause of Action 5 alleges claims of invasion of privacy. Specifically, the allegations state that Ms. Raines, Ms. Ferguson, Ms. Moken and unnamed defendants compiled a "consumer report" from an investigative reporting agency and disclosed the contents of that report at business events and over the internet between 2011 and 2014.  (Am. Compl. at ¶¶ 101-107.)  There are several forms of invasion of privacy and the allegations in the Amended Complaint purport to assert two of them: Intrusion and Public Disclosure of Private Life.  (Id. at p. 20); Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994) (outlining forms of invasion of privacy).

A claim in New Jersey for intrusion upon seclusion follows the Restatement (Second) of Torts description of that tort: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."  3 Restatement (Second) of Torts § 652B (1977); see also Castro v. NYT Television, 384 N.J. Super. 601, 608-09 (App. Div. 2006).

Plaintiff has not stated a claim for intrusion upon seclusion, as the contents of the report are not described other

13

than to say that are records of his "private information" or his
"personal affairs."  See generally Swift v. United Food Comm.
Workers, 2008 WL 2696174, at *4 (App. Div. July 11, 2008)
(dismissing intrusion claim where plaintiff did not support his
claims with "any basic and essential facts").  Plaintiff
describes the report as a "consumer report."[10]  (Am. Compl. at ¶
102.)  The best indication the Amended Complaint gives, however,
is that Intelysis Corp., the company which conducted an
investigation of plaintiff, sought to determine whether the
credentials Plaintiff provided in his employment application
were correct with regard to Plaintiff's attendance of a mini-MBA
program at a public university.  (Id. at Ex. E); Hammer, 2009 WL
1686820, at *6 (holding that company which hired an investigator
to seek out wrongdoing by CEO, including tailing the CEO on a
date, did not state a claim for intrusion upon seclusion).
Absent more information, this Court cannot determine that

_____

[10] Plaintiff alleges that Intelysis prepared a consumer
report in violation of 15 U.S.C. § 1681.  The allegations do not
support this.  First, Plaintiff has not asserted a cause of
action against Intelysis, which is significant.  Hammer v. Hair
Sys., 2009 WL 1686820, at *6 (App. Div. June 18, 2009).  Second,
Plaintiff has not alleged that Intelysis was a consumer
reporting agency.  Indeed, the e-mail signature in the document
incorporated into the Amended Complaint indicates that Intelysis
Corp. provides "due diligence[,] digital forensics[,] employment
screening[,] forensic accounting[, and] investigations."  (Am.
Compl. Ex. E); see also Hammer, at *6 (holding that FCRA claim
could not be stated against company that conducted employment
investigation, absent showing that the investigator "regularly
engages in the preparation on consumer reports.").

14

Plaintiff has stated an intrusion that would be highly offensive to a reasonable person.[11]  See In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2015 WL 248334, at *6 (noting that intrusion claim requires "truly exceptional conduct"); Tomayo v. American Coradious Intern., L.L.C., 2011 WL 6887869, at *4 (D.N.J. Dec. 28, 2011) (holding that bare allegations of repeated harassing phone calls, without more, are insufficient to state a claim).

With regard to public disclosure of private facts: "In order to state a claim . . . a plaintiff must establish that private matters were revealed, that dissemination of such facts would be highly offensive to a reasonable person, and that there is no legitimate public interest in the disclosure." Capers v. FedEx Ground, 2012 WL 2050247, at *5 (D.N.J. June 6, 2012).  The statute of limitations for this claim is one year.  Rumbauskas v. Cantor, 138 N.J. 173, 183 (1994); accord Kassa v. Johnson, 2009 WL 1658528, at *5 (App. Div. June 16, 2009); Rolax v. Whitman, 175 F. Supp. 2d 720, 720 (D.N.J. 2001).  All of the alleged conduct in this case, by Plaintiff's admission, occurred between March 16, 2011 and January 2, 2014.  (Id. at ¶ 104.)  As such, Plaintiff's claim for public disclosure is time-barred.

---

[11] If Plaintiff can allege further information about the report showing that its preparation states a claim for intrusion upon seclusion, he may file an amended version of his allegations.

Moreover, even if Plaintiff's claim for public disclosure were timely, he has failed to state a claim for the same reasons as his intrusion claim: absent additional information, the allegations do not establish beyond a conclusory level that private matters were revealed or that such matters would be highly offensive to a reasonable person.  Cf. Capers, 2012 WL 2050247, at *5 (holding plaintiff had stated a claim because "the law recognizes that information regarding a private employee's income is a private matter").  If the extent of the report were whether Plaintiff attended Rutgers University, which is the only subject area the Amended Complaint suggests the report covers, such information would not be highly offensive to a reasonable person.

As a result, because Plaintiff has failed to state a claim, Cause of Action 5 must be dismissed at screening.

**E. Cause of Action 6 – Defamation**

Plaintiff also brings a series of defamation claims against Ms. Raines, Ms. Ferguson, Ms. Moken, Mr. Colozzi, Ms. Wescoat, Mr. Friedman, and Ms. Friedman.  Under New Jersey law, the statute of limitations for a libel or slander actions is one year.  N.J.S.A. 2A:14-3.  While the allegations of the defamatory conduct are various, the conduct appears to have occurred between April 2011 and June 2013.  (Am. Compl. at ¶¶

16

115, 127.)  Plaintiff's claims are therefore untimely and must be dismissed.[12]

## F. __Cause of Action 7 – Legal Malpractice__

Plaintiff brings claims of legal malpractice against the Law Firm of Helmer, Conley & Kasselman, P.A., Mr. Helmer, Mr. Conley, and Ms. Trani.  The statute of limitations on a legal malpractice claim in New Jersey is two years.  N.J.S.A. 2A:14-2(a).  Plaintiff claims that his attorneys pressured him into agreeing to be subject to a restraining order from Ms. Raines in 2012.  (Am. Compl. at ¶ 144-149.)  As such, Plaintiff's claims are time-barred.

## G. __Cause of Action 8 – Criminalization of Inherent Liberty and Protection From Fundamentally Unfair Governmental Action__

Cause of Action 8 is a vague amalgam of allegations against ten different defendants.  Plaintiff claims first that AP Corson wrongly dismissed his criminal complaints against Ms. Raines. (Am. Compl. at ¶ 175.)  Put simply, such conduct is squarely within the prosecutor's discretion.  State v. Ward, 303 N.J.

---

[12] While Plaintiff provides the date of the alleged defamation by all other defendants, he does not do so for Ms. Wescoat.  Other than serving a subpoena, (Am. Compl. at ¶ 213), Plaintiff alleges no conduct whatsoever that occurred within one year of his filing this action in the entire Amended Complaint. As such, the Court is inclined to believe this claim is time-barred.  Nevertheless, if Ms. Wescoat's statements indeed occurred within one year of Plaintiff the Complaint, he may amend his allegations to state the dates of the alleged defamatory conduct and proceed with the claim.

Super. 47, 50 (App. Div. 1997) ("[T]he Attorney General and the county prosecutors have been designated to prosecute the criminal business of the State, and to exercise the discretion whether to prosecute or refrain from prosecution.") (citation omitted); See also N.J.S.A. 2A:158-4 ("The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors").  As such, any allegations concerning such a decision fail to state a claim.

Second, the allegation that certain defendants planned to catch Plaintiff violating his restraining order does not state a cause of action.  (Am. Compl. ¶ 176.)  To the extent that Plaintiff's alleged apprehension and restraint without a warrant pursuant to this plan states a claim for violation of his constitutional rights pursuant to 42 U.S.C. § 1983, such a claim would be time-barred under the two-year statute of limitations. Kreimer v. National R.R. Passenger Corp., 2011 WL 4906631, at *1 (D.N.J. Oct. 13, 2011).

Third, Plaintiff alleges that on "diverse dates after May 17, 2013," many defendants "participated in the tampering with and destruction of evidence in Plaintiff's criminal investigation."  (Am. Compl. at ¶ 184.)  Other than a bald allegation that the destroyed evidence "demonstrated Defendant Ms. Raines acted as an aggressive antagonist and not as a victim," Plaintiff does not elaborate on how or what evidence

18

was destroyed or concealed.  As such, the allegations do not allow this Court to infer a cause of action.

Finally, Plaintiff's assertion that Mr. Auletto swore "false statements before a Grand Jury," is so devoid of factual matter that this Court cannot assess whether he has plausibly stated a claim.[13]  Moreover, such a claim would need to address the notion that "[p]rosectuorial immunity extends to employees of a prosecutor, including detectives, 'when the employee's function is closely allied to the judicial process.'"  <u>Newsome v. City of Newark</u>, 2014 WL 4798783, at *2 (D.N.J. Sep. 25, 2014).

Accordingly, because none of the conduct alleged in Cause of Action 8 plausibly states a timely claim, this set of allegations, too, must be dismissed.

## H. <u>Cause of Action 9 – Negligence and Breach of Duty</u>

Plaintiff also asserts a host of claims against nine defendants for "negligence" and "breach of duty."  Each of these claims appears more likely to be a claim for violation of his constitutional rights pursuant to 42 U.S.C. § 1983.

---

[13] Moreover, to the extent Plaintiff seeks to impugn any ongoing criminal proceedings in state court or proceedings which resulted in conviction or imprisonment, such an action by this Court would run afoul of the <u>Heck</u> doctrine.  <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  The Court has explained this to Plaintiff at a previous hearing.  <u>See, e.g.,</u> <u>Aristeo v. Helmer</u>, Civ. No. 15-1252 (April 21, 2015 Hr'g Tr. at 22:20-23:2.)

With regard to Plaintiff's claim that his Open Public
Records Act (OPRA) was improperly denied, the alleged conduct
occurred in January 2012.  As such, even if this were to state a
negligence or § 1983 claim, such a claim is time-barred.
N.J.S.A. 2A:14-2; Patyrak v. Apgar, 511 F. App'x 193, 195 (3d
Cir. 2013).  Moreover, OPRA provides a designated forum by which
denials of requests may be adjudicated.  N.J.S.A. 47:1A-6.

Regarding the circumstances of Plaintiff's arrest on May
17, 2013, including that he was subject to excessive force and
was arrested without jurisdiction, such conduct is also time-
barred for the same reason as Plaintiff's OPRA request denial.
(Am. Compl. at ¶¶ 200-203, 223.)

Plaintiff alleges that he served a subpoena *duces tecum*
upon the Voorhees Township Police Department and Mr. Bordi in
order to assist in his defense, and that Mr. Bordi failed to
respond to the subpoena.  (Id. at ¶¶ 213-214.)  Absent more
information than these two brief allegations, such as the nature
of the subpoena and whether it was properly served, this Court
cannot infer facts sufficient to demonstrate that Plaintiff has
stated a claim.

Accordingly, because Plaintiff's claims are either non-
viable or time barred, Cause of Action 9 must be dismissed at
screening.

I. **Cause of Action 10 – Cruel and Unusual Punishment**

Plaintiff also raises a constitutional challenge arising out of the alleged the conditions of his confinement at Camden County Correctional Facility (CCCF) in May and June 2013.  Many of Plaintiff's claims of wrongs committed against him during his pretrial detention strike this Court as fanciful or exaggerated. Nevertheless, the Court assumes that Plaintiff—under pain of this Court's inherent power to address frivolous allegations—has complied with Federal Rule of Civil Procedure 11's requirement that factual contentions have evidentiary support and are brought in good faith.  Fed. R. Civ. P. at 11(b)(3). Specifically Plaintiff alleges the following conduct violated his Eighth Amendment rights:

- Upon admission to CCCF, the intake nurse briefly looked at an injury to Plaintiff's wrist, but denied him access to a doctor because she did not find the injury to be urgent, (Am. Compl. at ¶¶ 228-29);

- Plaintiff was not released from his cell for exercise and over a 29-day stay was only permitted three total hours out of his cell (and then only to shower),  (Am. Compl. at ¶¶ 237-38);

- Plaintiff was not permitted to shower for eleven days, (Id.);

- Four inmates were placed in a cell designed for two inmates, (Id. at ¶ 234);

- Plaintiff's cell was without toilet paper for days, (Id. at ¶ 240);

- Plaintiff was denied access to basic hygiene items including a toothbrush, (Id. at ¶¶ 241-42);

21

- Plaintiff was denied clean clothes, (Id. at ¶¶ 244-46);

- The cells and hallways were covered in mold and feces and Plaintiff suffered a four-day sickness as a result, (Id. at ¶¶ 248, 252);

- Plaintiff was not permitted to file grievances or grievance forms Plaintiff filed were thrown out in front of him, (Id. at ¶¶ 256-57);

- Due to grievances he managed to file, facility staff physically threatened Plaintiff and threatened him with delay of food, (Id. at ¶ 258);

- Plaintiff was attacked by a psychologically unstable fellow inmate, (Id. at ¶¶ 241-42);

- Plaintiff was denied access to the law library, (Id. at ¶¶ 265-66).

Plaintiff's constitutional claims necessarily implicate 42 U.S.C. § 1983.  In order to recover under § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  Moog v. Untig, 2008 WL 4154548, at *3 (D.N.J. Sep. 3, 2008) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

As outlined below, at least some of Plaintiff's allegations against unnamed prison employees appear to show a constitutional deprivation by a state actor.[14]  As such, the Court will, with

---

[14] In addition to bringing this action against anonymous prison employees, Plaintiff has brought this action against the County of Camden, CCCF, Mr. Lanigan—who Plaintiff alleges oversaw CCCF, and Mr. Owens—the Warden of CCCF.  Plaintiff cannot name CCCF as a proper defendant to this cause of action

22

great caution, allow this claim to proceed past the screening stage against those defendants.

### i. Due Process

With regard to a constitutional deprivation, because the allegations appear to concern Plaintiff's pretrial detention, the Eighth Amendment is not directly applicable.  "It is well-settled that the Eighth Amendment does not provide protection to individuals who have not yet been convicted or sentenced." Mattern v. City of Sea Isle, 2015 WL 5445042, at *6 (D.N.J. Sep. 15, 2015).  Nevertheless, the Fourteenth Amendment due process rights of pretrial detainees prohibit punishment prior to an adjudication of guilt.  Moog v. Untig, 2008 WL 4154548, at *3 (D.N.J. Sept. 3, 2008).  As the Supreme Court has explained:

---

because "the jail is not an entity cognizable as a 'person' for the purposes of a § 1983 suit."  Diaz v. Cumberland Cnty. Jail, 2010 WL 3825704, at *3 (D.N.J. Sep. 23, 2010).  Neither is Camden County a person properly sued under § 1983.  Hill v. Ocean Cnty. Jail Complex, 2006 WL 902170, at *3 n.1 (D.N.J. Apr. 4, 2006) ("[L]ocal government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.").  Finally, Plaintiff conclusorily alleges that Warden Owens and Commissioner Lanigan "fail[ed] to provide an environment conducive of maintaining cognitive, emotional, and physical health and safety" or were aware of violations committed by other officers.  (Am. Compl. at 267-68.)  Without more than these sparse conclusions, Plaintiff has not plausibly shown personal involvement by these defendants.  Pfeiffer v. Hutler, 2012 WL 4889242, at *4-*5 (D.N.J. Oct. 12, 2012); see also Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) (supervisors "may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior").  As such, the claims against all of these defendants will be dismissed without prejudice.

> [I]f a particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment." Conversely, if a restriction or
> condition is not reasonably related to a legitimate
> goal-if it is arbitrary or purposeless-a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees.

Bell v. Wolfish, 441 U.S. 520, 539 (1979). The Court explained

that the government has a legitimate interest in maintaining

security and order at a detention facility. "Restraints that

are reasonably related to the institution's interest in

maintaining jail security do not, without more, constitute

unconstitutional punishment, even if they are discomforting and

are restrictions the detainee would not have experienced had he

been released while awaiting trial. Bell, 441 U.S. at 540.

Retribution, deterrence or grossly exaggerated responses to

genuine security considerations are not, however, legitimate

nonpunitive governmental objectives. Duran v. Merline, 2008 WL

9846824, at *6 (D.N.J. Mar. 11, 2008).

The Third Circuit has explained that in applying the

holding of Bell, as in the Eighth Amendment's cruel and unusual

punishment standard, the Fourteenth Amendment standard of

unconstitutional punishment contains an objective and subjective

component:

> [T]he objective component requires an inquiry into
> whether "the deprivation [was] sufficiently serious"

24

and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  In order to satisfy the objective component, "an inmate must show that he was subjected to genuine privation and hardship over an extended period of time."  Kilmartin v. Ocean County Dept. of Corrections, 2012 WL 2839823, at *3 (D.N.J. July 10, 2012).  To satisfy the subjective component, it must be shown that an individual defendant was deliberately indifferent to Plaintiff's health or safety, id., "a state of mind state of mind equivalent to a reckless disregard of a known risk of harm."  Burton v. Hudson Cnty. Correction Ctr., 2008 WL 508506, at *4 (D.N.J. Feb. 20, 2008).

##### 1. *Denial of Medical Care*

First, Plaintiff's allegation that the intake nurse failed to comply with N.J.A.C. 10A:31-13.9(c)(5) fails to state a claim.  That code provides for the initial medical screening of inmates before entering the general population.  Based upon Plaintiff's allegations, the nurse looked at Plaintiff's wrist and determined it was not an urgent matter requiring a doctor's care.  (Am. Compl. at ¶¶ 227-230.)  Such conduct, without more,

does not state a claim.[15]  See Ortiz v. Atlantic Cnty. Justice
Facility, 2014 WL 4755501, at *5 (D.N.J. Sep. 24, 2014) ("A
prisoner's subjective dissatisfaction with his medical care . .
. does not in itself indicate deliberate indifference.").
Plaintiff was provided medical care for his needs—an intake
nurse examined Plaintiff's wrist.  The care, while not resulting
in any alleged long term harm, simply did not meet Plaintiff's
satisfaction.  Duran, 2008 WL 9846824, at *8.  As such,
Plaintiff "has not demonstrated any serious medical need that
has been purposefully or willfully ignored by defendant[s.]"
Id.

    2. *Prison Conditions*

    Several of Plaintiff's allegations concerning the
conditions of his confinement state a claim that his due process
rights were violated.  For instance, "the near-total deprivation
of the opportunity to exercise may violate the Eighth Amendment
unless the restriction relates to a legitimate penological
purpose."  Platt v. Brockenborough, 476 F. Supp. 2d 467 (E.D.
Pa. Feb. 21, 2007); see also Patterson v. Mintzes, 717 F.2d 284,
289 (6th Cir. 1983) (denial of exercise for 46 days sufficient
to survive summary judgment).  While "dramatic restrictions on

---

    [15] Additionally, this conduct occurred on May 17, 2013,
thereby rendering it time-barred by the two-year statute of
limitations.  Muhammad v. Dep't of Corrections, 645 F. Supp. 2d
299, 309 (D.N.J. 2008).

exercise" may not give rise to constitutional violations where adequate indoor activity is provided, Stone-El v. Sheahan, 914 F. Supp. 202, 207 (N.D. Ill. 1995), here Plaintiff alleges he was only permitted to leave his cell for a total of three hours in twenty-nine days, and then only to shower.

Likewise, the denial of personal hygiene products, showers or clean cell facilities is also sufficient where dramatic enough to cause the illness Plaintiff alleges. Shorter v. Baca, 101 F. Supp. 3d 876, at 895 (C.D. Cal. Apr. 21, 2015) ("Plaintiff also notes that she was deprived access to showers . . . and that her cell was not cleaned during her entire 32-day stay. These are all basic necessities protected by the constitution.").[16] Specifically, Plaintiff alleges he became physically ill for four days as a result of the conditions. At this very early stage, Plaintiff's allegations are sufficient to survive screening.

---

[16] Other portions of Plaintiff's allegations concerning confinement do not state a claim. Plaintiff's lack of space is not enough. Hubbard v. Taylor, 538 F.3d 229, 234-35 (3d Cir. 2008) (holding no due process concerns arose from "substantial time on floor mattresses"). Plaintiff's deprivation of toilet paper for several days, while unfortunate, has been held not to be a constitutional violation. Stilton v. Albino, 2010 WL 4916103, at *12 (D.N.J. Nov. 23, 2010). Plaintiff has not shown beyond a conclusory level that he was placed in a cell with a psychologically disturbed inmate as a form of punishment or through culpable intent to punish or deliberate indifference. See Bistrian v. Levi, 696 F.3d 352, 370 (3d Cir. 2012).

Plaintiff's allegations that he was named "mister grievance" by the defendants, that grievance forms were thrown away in front of him, that he was physically threatened, denied food, and wrongly punished is sufficient to meet to subjective prong of the Bell analysis.  Such conduct viewed in the light most favorable, supports the inference that some or all of problematic conditions of confinement were meant to punish Plaintiff.  Bragg v. Ellis, 2015 WL 8491471, at *4 (D.N.J. Dec. 9, 2015).

### ii.   **Access to the Courts**

Plaintiff also alleges that he was denied access to the law library and a paralegal for purposes of researching his legal defenses.  Such a claim is premised on denial of access to the courts, a right guaranteed to inmates by the Constitution.  Duran v. Merline, 923 F. Supp. 2d 702, 722 (D.N.J. 2013).  The Supreme Court has recognized "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1997).)

In order to state a claim for denial of access to the courts, a plaintiff must state, *inter alia*, an "actual injury."

28

Duran, 923 F. Supp. 2d at 723.  To do this, he must identify an actual, non-frivolous claim or defense that was lost to him by being denied access to the courts.  Small v. Owens, 2006 WL 2355512, at *9 (D.N.J. Aug. 10, 2006).  Plaintiff has identified no such claim.  As a result, his access to the courts claim must be dismissed without prejudice.

### iii. Retaliation

Plaintiff also appears to allege that he was retaliated against for completing grievance forms.  "[R]etaliation for the exercise of constitutionally protected rights . . . 'is itself a violation of rights secured by the constitution actionable under section 1983."  Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (quoting Withite v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  Plaintiff must allege "(1) he engaged in constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action."  Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015).

"[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity."  Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011) (per

29

curiam).  Plaintiff has alleged that he frequently filed grievance forms while incarcerated.  As noted above, Plaintiff alleges for so doing he was ridiculed, harassed, threatened, and denied food.  He also alleges that he witnessed his grievances thrown into the trash.  Such allegations, if made in good faith, state a claim for retaliation sufficient to survive screening.[17]

### J. Causes of Action 11, 12 and 14

Plaintiff also brings claims for: (1) criminalization of first amendment freedoms, (2) violation of his right to substantive due process, (3) concealment or destruction of evidence.  All three of these claims suffer from the same deficiency: they state merely conclusory allegations devoid of any factual underpinning.

First, with regard to Plaintiff's claim for criminalization of first amendment freedoms, he accuses 16 different defendants of acting in concert to "directly and proximately cause[] Plaintiff the loss of First Amendment freedoms for individual expression, association with like-minded individuals, public opinion and criticism, public protest, and the redress of

---

[17] The Court takes this opportunity specifically to warn Plaintiff.  During the course of the litigation, if it becomes evident that he did not in fact have a good faith belief that his factual contentions had evidentiary support, the Court will not hesitate to consider the full range of appropriate sanctions, up to and including filing preclusion.  Fed. R. Civ. P. 11(c).

grievances, including the presentation of grievances before a tribunal." (Cmpl. ¶ 269.) Plaintiff elaborates no further than this, other than to criticize judges who issued gag orders in proceedings of which he was a part.[18] These vague, conclusory allegations are insufficient to state a claim and must be dismissed.

Second, with regard to a denial of substantive due process, the Court is again at a loss as to the substance of Plaintiff's claims. Plaintiff names everyone from his former romantic interest and employer, Ms. Raines, to his former defense attorneys of detaining Plaintiff on multiple occasions without a legal basis, incarcerating him for approximately seven months, and facilitating and assisting with Plaintiff's deprivation of rights and individual liberty. (Cmpl. At ¶ 276.) The complaint contains no factual allegations to substantiate these far-reaching claims. As such, this cause of action fails to state a claim and must be dismissed.

Third, Plaintiff alleges that 17 defendants concealed or destroyed "evidence." Even assuming such conduct, presumably a part of Plaintiff's criminal prosecution in state court, could be the subject of a civil claim in federal court, Plaintiff does

---

[18] Such claims run afoul of judicial immunity and the Rooker-Feldman doctrine. The Court previously advised Plaintiff of this. Aristeo v. Helmer, Civ. No. 15-1252 (April 21, 2015 Hr'g Tr. at 17:18-23.)

not indicate which evidence was destroyed, the manner in which
it was destroyed, or when it was destroyed.  A pleading must
indicate "the who, what, when, where, and how: the first
paragraph of any newspaper story." Advanta Corp. Sec. Litig.,
180 F.3d 525, 534 (3d Cir. 1999).  District Courts "should not
have to read and decipher tomes disguised as pleadings." Imoore
v. Gasbarro, 2012 WL 1909368, at *4 (D.N.J. May 25, 2012).
Absent further factual detail from which this Court can
reasonably infer a viable cause of action, this claim must be
dismissed.

### K. Cause of Action 13

Plaintiff also brings a cause of action for Intentional
Infliction of Emotional Distress against twelve defendants for
their conduct against him.  "Generally speaking, to establish a
claim for intentional infliction of emotion distress, the
plaintiff must establish intentional and outrageous conduct by
the defendant, proximate cause, and distress that is severe."
Drisco v. Elizabeth, 2013 WL 6450221, at *9 (D.N.J. Dec. 9,
2013).  The Court is confined, again, to the two-year statute of
limitations in considering conduct.  N.J.S.A. 2A:14-2.

While the Court is convinced much of the conduct Plaintiff
alleges to fulfill this cause of action occurred outside the
limitations period, even looking at the conduct as a whole as
alleged in the Complaint, Plaintiff only conclusorily alleges

that he suffered "damages and losses, severe mental anguish, and emotional and physical distress." Johnson v. Peralta, 2013 WL 775541, at *2 (D.N.J. Feb. 27, 2013) (dismissing emotional distress claim founded upon conclusory allegations about the suffering of emotional distress). Absent more specific allegations of severe distress, Plaintiff has not stated a cause of action.

## IV.   CONCLUSION

In light of the above, all of Plaintiff's claims are dismissed without prejudice with the exception of his claims concerning his conditions of confinement and retaliation against unnamed defendants. These two claims are misjoined, as there is no common question of law or fact with regard to this cause of action in relation to the dismissed causes of action. Fed. R. Civ. P. 20. As such, the Court will sever this portion of the action into a new civil action number. See Alfred v. New Jersey, 2015 WL 4138882, at *2-*3 (D.N.J. July 9, 2015) ("Rule 20's requirements are to be liberally construed in the interest of convenience and judicial economy."). Plaintiff may amend his factual allegations with regard to the dismissed without prejudice causes of action in the current civil action within **thirty days of the entry of the accompanying Order**, although the Court warns Plaintiff of his Rule 11 obligations. See supra at n.17.

With regard to the severed causes of action, while Plaintiff's Amended Complaint has survived screening, "as a practical matter, it is in most instances impossible for the United States Marshal to serve a summons and complaint on . . . unidentified defendants." Boyd v. Bergen Cnty. Jail, 2007 WL 1695736, at *3 n.1 (D.N.J. June 7, 2007) (citation omitted).  As such, pursuant to the applicable version of Rule 4(m) at the time of filing of the Complaint, within 120 days of entry of the accompanying Order Plaintiff shall file an amended complaint identifying by name the fictitious defendants who are alleged to have violated his rights.  Thereafter, upon receipt of adequate identifying information, the Clerk of the Court shall issue summons against those defendants.  For the time being, the Court will administratively terminate the new civil action as well, subject to automatic reopening upon the filing of an amended complaint.  An appropriate Order follows.


DATED: February 3, 2016

                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE